

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA RAMIREZ, an individual, on behalf of herself and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAREFUSION RESOURCES, LLC, a Limited Liability Company; and DOES 1-50, Inclusive,<br><br>Defendants. | Case No.: 18-cv-2852-BEN-MSB<br><br>**ORDER DENYING MOTION TO REMAND**<br>**[Doc. 9]** |

Pending before the Court is Plaintiff's motion to remand. For the following reasons, the motion is **DENIED**.

## I. DISCUSSION

Plaintiff Lisa Ramirez filed this action against her employer, Defendant Carefusion Resources, LLC, in the California Superior Court, County of San Diego. Plaintiff brings suit for various California Labor Code violations, including (1) failure to pay overtime wages in violation of Cal. Lab. Code § 510, (2) failure to provide required meal and rest periods in violation of §§ 226.7 and 512, (3) failure to provide accurate itemized wage statements in violation of § 226, and (4) failure to provide wages when due in violation of §§ 201, 202, and 203.

1

Defendant removed this action based on original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). Plaintiff now moves to remand, arguing that Defendant has not carried its burden to show either minimal diversity or the requisite amount in controversy. Plaintiff further contends that, even if the Court finds the CAFA requirements are satisfied, both the "local controversy" and "home-state controversy" exceptions apply to deprive this Court of jurisdiction. *See* 28 U.S.C. § 1332(d)(3)-(4). As a threshold matter, the Court first considers whether it has jurisdiction under CAFA.

**A. Jurisdiction Under CAFA**

Defendant removed this action under CAFA, which confers jurisdiction on district courts in any civil action where three requirements are met: "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, the proposed class consists of more than 100 members, and any member of the class of plaintiffs is a citizen of a State different from any defendant." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 788 (9th Cir. 2018) (quoting 28 U.S.C. § 1332(d)(2)) (internal quotation marks omitted). As required, Defendant filed a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1146(a). Importantly, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). The parties appear to agree, and the Court is satisfied by the evidence, that the proposed class consists of more than 100 members. Thus, the Court turns to Plaintiff's attack on both the minimal diversity and amount in controversy requirements.

1. <u>Minimal Diversity</u>

CAFA requires only "minimal diversity" between the parties. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007). The minimal diversity requirement is satisfied if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). For purposes of determining diversity, an

2

18-cv-2852-BEN-MSB

individual person is deemed to be a citizen of the state in which he or she is domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Defendant offers a declaration in support of its assertion that at least one class member is domiciled in Texas, which Defendant identifies by name. [Doc. 1-9 at ¶ 5.] Plaintiff does not dispute this fact or offer any evidence to the contrary.

Determining Defendant's citizenship, however, is a more complicated matter, in part because of its status as a Limited Liability Company ("LLC"). In traditional diversity cases, LLCs are treated like partnerships for purposes of diversity jurisdiction, meaning that an LLC is deemed a citizen of *every* state of which its members are citizens. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). In § 1332(d)(10), however, CAFA seemingly carves out an exception to that rule, *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006), providing that "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."

In the Ninth Circuit, whether an LLC is "an unincorporated association" for CAFA purposes under § 1332(d)(10) remains an open question. Nonetheless, the Fourth Circuit—the only federal circuit to expressly resolve the question—offers persuasive guidance. In *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698 (4th Cir. 2010), the Fourth Circuit expressly held that an LLC is properly considered an "unincorporated association" within the meaning of § 1332(d)(10) "and therefore is a citizen of the State under whose laws it is organized and the State where it has its principal place of business." *Id.* at 700. Likewise, most courts to consider the issue have reached the same conclusion, finding that § 1332(d)(10) applies to all types of non-corporate business entities. *See, e.g., Marroquin v. Wells Fargo, LLC*, 2011 WL 476540, at *2 (S.D. Cal. Feb. 3, 2011) (treating an LLC as an unincorporated association under CAFA); *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032, n. 13 (9th Cir. 2009) (applying § 1332(d)(10) to a limited partnership); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (recognizing that an LLC

is a type of "unincorporated association" and that "in the limited context of class actions, Congress has created a statutory exception to [the traditional] rule of citizenship for unincorporated associations").

Accordingly, the Court finds that for purposes of CAFA, Defendant is "a citizen of the State where it has its principal place of business and the State under whose laws it is organized." § 1332(d)(10); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) ("§ 1332(d)(10) . . . departs from the rule that frequently destroys diversity jurisdiction, that a limited partnership's or unincorporated association's citizenship for diversity purposes can be determined only by reference to all of the entity's members."). Plaintiff's reliance on non-CAFA case law does not require a different conclusion. *See, e.g., Johnson*, 437 F.3d at 899 (9th Cir. 2006) (explaining in *non*-CAFA case that LLCs are treated like partnerships for purposes of diversity jurisdiction, meaning that an LLC is a citizen of every state of which its members are citizens). Moreover, to apply the traditional diversity rule holding that LLCs are citizens of every state in which their members are domiciled would likely undermine Congress's intent "to facilitate adjudication of certain class actions in federal court" by excluding from federal adjudication the vast majority of class actions brought against LLCs. *See Dart Cherokee*, 135 S. Ct. at 554.

Applying the § 1332(d)(10) citizenship test to Defendant, then, the Court must determine (1) the state under whose laws it is organized and (2) where it maintains its principal place of business. There is no dispute that Defendant is a citizen of Delaware under whose laws it is organized. The parties dispute, however, where Defendant holds its principal place of business. In *Hertz Corp. v. Friend*, the Supreme Court held that a corporation's principal place of business "refer[s] to the place where a corporation's officers direct, control, and coordinate the corporation's activities." 559 U.S. 77, 92-93 (2010). This place "should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and

4

coordination, *i.e.*, the 'nerve center.'" *Id.* at 93.

Although Defendant's notice of removal did not identify its principal place of business, it did assert that "its principal place of business is not in Texas." [Doc. 1-9 at ¶ 5.] In opposition to remand, Defendant now, for the first time, contends its principal place of business is in New Jersey. In support, Defendant provides a declaration stating that its officers "are primarily located in New Jersey, including the Corporate Secretary and Vice President of Tax, who are generally responsible for CareFusion's corporate and administrative activities." [Doc. 10-1 at ¶ 2.] For the first time in her reply, Plaintiff attaches evidence suggesting that Defendant's principal place of business is actually in California.[1] [Doc. 11-1.] For example, Plaintiff attaches a Statement of Information filed with the California Secretary of State, which lists a California address as Defendant's "principal office" and "mailing address." Defendant's Notice and Acknowledgment of Pay Rate and Payday lists a California address as Defendant's "Main Office" and "Mailing Address." In addition, Defendant provides a California address on the Earning Statements it issues to its employees. Finally, Defendant identifies San Diego, California as its "headquarters" on its LinkedIn page.

When weighed against Defendant's failure to identify its headquarters and its minimal evidence showing New Jersey to be its principal place of business, the Court finds that Plaintiff has offered sufficient evidence to raise a question as to whether Defendant's principal place of business is in New Jersey or California. Still, the Court need not resolve this dispute here because regardless of whether Defendant is a citizen of California or New

---

[1] Defendant filed an objection requesting that the Court ignore Plaintiff's late-filed evidence showing its principal place of business to be in California. [Doc. 12.] In support, Defendant cites *Sanchez v. Am. Para Prof'l Sys. Inc.*, 2017 WL 3605230, at *2 (N.D. Cal. Aug. 22, 2017) in which the court agreed that plaintiff "may not introduce new evidence in its reply brief" for purposes of the amount in controversy finding. Here, as in *Sanchez*, however, Defendant could have sought leave to file a sur-reply with additional evidence. The Court will consider the evidence.

Jersey, minimal diversity is met: at least one class member is domiciled in Texas, making at least one class member diverse from Delaware, as well as both California and New Jersey. *See* § 1332(d)(2)(A). As a CAFA case, the presumption against removal does not apply, and thus, regardless of whether Defendant's principal place of business is in California or New Jersey, the Court is satisfied that minimal diversity exists. *See Dart Cherokee*, 135 S. Ct. at 554.

2. Amount in Controversy

When a defendant removes a case, the "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 553. From there, "the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 553. If, however, the plaintiff contests the amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 554 (citing 28 U.S.C. § 1446(c)(2)(B)). Here, the parties dispute whether Defendant has adequately shown that CAFA's $5 million amount in controversy requirement is met. In its opposition brief, Defendant offers evidentiary support for the following calculations:

- Wage Statement Claim: (752 wage statements x $50 = $37,600) + (18,968 wage statements x $100 = $1,896,800) = **$1,934,400**
- Waiting Time Penalty Claim: 636 employees receiving average hourly rate of $26.31 with Plaintiff seeking up to 30 days of penalties = **$4,015,958.40**
- Meal and Rest Break Claims: 1,431 employees x 99.3 workweeks x $28.21 = **$4,008,593.04**
- Overtime Claim: 1,431 employees x average 99.3 workweeks x average hourly rate of $28.21 x 1.5 to account for overtime rate owed = **$6,012,889.56**

6

The Court need only consider the first two claims to find that Defendant has established by a preponderance of the evidence that the amount in controversy exceeds $5 million.

### a. Wage Statement Claim

California Labor Code § 226 requires that employers provide employees "an accurate itemized statement in writing," which includes the gross wages earned, total hours worked by the employee, all deductions, net wages earned, the inclusive dates of the period for which the employee is paid, the name and address of the legal entity that is the employer, all applicable hourly rates in effect during the pay period, and more. If the employer fails to provide accurate wage statements, the employee is entitled to recover the greater of all actual damages or $50 for the initial pay period in which a violation occurs and $100 "per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)," in addition to costs and attorney's fees. Cal. Labor Code § 226(e)(1). A one-year statutory period generally applies. *Falk v. Children's Hospital Los Angeles*, 237 Cal. App. 4th 1454, 1469 (2015).

Defendant estimates the wage statement penalties claim, alone, is worth $1,934,400. In support, Defendant relies on Human Resources Business Partner Latoya Greve's Declaration, which provides that Defendant issued approximately 19,720 wage statements to 752 putative class members during the one-year period. Based on these numbers, Defendant calculates the $50 penalty as $37,600 (752 initial pay period violations x $50), and the subsequent pay period violations as $1,896,800 (18,968 wage statements x $100), for a total of $1,934,400.

Plaintiff disputes the assumptions Defendant made in calculating the estimated wage statement penalties. Specifically, she argues that Defendant improperly assumes that the 752 class members worked overtime or missed meal and/or rest breaks during *every one* of their pay periods in that year, which unreasonably assumes a 100% violation rate. "In determining the amount in controversy, courts first look to the complaint." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "Under this system,

CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using *reasonable* assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198 (emphasis added). Here, in light of what is at stake in the litigation, a 100% violation rate assumption—that every wage statement during the one-year period violated § 226—is not unreasonable. First, Plaintiff provides no evidence supporting her contention that there were ever any wage statements that included the requisite "accurate itemization" of overtime, missed meal breaks, and rest breaks. Further, Plaintiff's Complaint additionally alleges that defendant failed to list "*all* the requirements under Labor Code § 226" on its wage statements, such as failing to indicate the name and address of the employer. Complaint, ¶ 82 (emphasis added). As Defendant correctly argues, such facial violations necessarily imply a 100% violation rate. *See, e.g., Vikram v. First Student Mgmt., LLC*, 2017 WL 4457575, at *4 (N.D. Cal. October 6, 2017) (finding reasonable defendant's 100% violation rate assumption because of plaintiff's lack of evidence to the contrary and allegations suggesting the off-the-clock work occurred every day). Therefore, Defendant's calculation is premised on a "reasonable assumption[]." *Ibarra*, 755 F.3d at 1198.

*b. Waiting Time Penalties Claim*

As to Plaintiff's waiting time penalties claim, Defendant estimates a sum of $4,015,938.40. In that claim, Plaintiff seeks penalties for "[t]he wages of all terminated employees from the California Labor Sub-Class as a penalty . . . [under] Cal. Lab. Code § 203." Complaint Prayer for Relief, ¶ 2(e). California Labor Code § 203 provides that "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." During the claims period, Defendant's declaration provides that at least 636 individuals employed as non-exempt employees in California separated from their employment and earned an average hourly rate of $26.31. Defendant

8

estimates total penalties of $4,015,958.40 after assuming an average hourly rate of $26.31 x 8 hours x 30 days x 636 putative class members.

Plaintiff argues that Defendant cannot assume all 636 class members worked eight hours per day for 30 days. The Court disagrees. First, Defendant's assumption of an 8-hour work day in calculating the penalties is not unreasonable where Plaintiff alleges that *all* members of the putative class "were required to work, and did in fact work, overtime," which necessarily means that each class member worked more than eight hours in a day or 40 hours in a week.[2] Complaint, ¶ 67; *see also, e.g., Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *12 (N.D. Cal. June 14, 2013) (finding reasonable defendant's assumption of an 8-hour work day where evidence showed that "vast majority" of putative class members were full time employees).

Second, Defendant's assumption of the maximum 30-day period of penalties is not unreasonable. Plaintiff's Complaint "demands up to thirty days of pay as penalty for not paying all wages due at time of termination for all employees who terminated employment during the [claims] period." Complaint, ¶ 91. Plaintiff's express demand for the "up to thirty day[]" penalty for *all* employees who were terminated based on her allegations that the employees were not timely paid for overtime, missed meal, and/or missed rest breaks makes the 30-day assumption a reasonable one. *See Ibarra*, 755 F.3d at 1197 ("In determining the amount in controversy, courts first look to the complaint.").

Other courts have applied similar logic to waiting time claims. For example, in *Crummie v. CertifiedSafety, Inc.*, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017), the defendant assumed the full 30-day statutory penalty on the plaintiff's waiting time claim, given the allegation that the class was owed pay for overtime, missed meal, and missed rest

---

[2] Moreover, even with, for example, a more conservative 7 hours per day assumption, the waiting time claim would still equate to $3,513,963.60, making the grand total $5,448,363.60, well over the $5 million minimum, even without including any of Plaintiff's other claims.

9

18-cv-2852-BEN-MSB

breaks. The court found that assumption "completely reasonable" where the plaintiff's theory "plainly is that putative class members were owed (and are still owed) pay for overtime and missed meal and rest breaks, even if their final paychecks were timely delivered." *Id.* In contrast, the court reasoned that, "if the gravamen of the allegation w[as] that [the defendant] was sometimes tardy in providing final paychecks, then indeed it would not be reasonable to assume that nearly all employees did not get their final paycheck for 30 or more days." *Id.* Here, as in *Crummie*, the gravamen of Plaintiff's waiting time claim is that Defendant still, to this day, "has not [timely] tendered payment of overtime wages" for "all employees who terminated employment" during the period. Thus, it is reasonable to use the full 30 days for each of the putative class members. *See also Marentes v. Key Energy Servs. Cal, Inc.*, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015) (where "wages are alleged to have not been paid, the full thirty days may be used for each of the putative class members"); *Altamirano*, 2013 WL 2950600, at *12 ("[A]s there is nothing in the complaint or the record to suggest that Defendants paid employees these unpaid wages at some point during the month after they separated from employment, awarding penalties for the entire 30 day period is reasonable.").

Because Defendant has proved by a preponderance of the evidence more than the $5,000,000 requisite amount ($1,934,400 + $4,015,958.40 = $5,950,358.40), the Court need not consider Plaintiff's meal and rest break claims, overtime claims, or whether attorneys fees should be included in the amount in controversy calculation, totaling to what Defendant contends is almost $25 million in controversy.[3] Accordingly, because the

---

[3] Further, to the extent Plaintiff contends the Court cannot assume that she will be successful on her claims for purposes of the amount in controversy requirement, she "conflates the amount in controversy with the amount of damages ultimately recoverable." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015); *see also Ibarra*, 775 F.3d at 1198, n. 1 ("Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual

10

18-cv-2852-BEN-MSB

proposed class exceeds 100 class members, minimal diversity exists, and the amount in controversy exceeds $5 million, the Court has jurisdiction under CAFA.

**B. Local and Home State Controversy Exceptions, § 1332(d)(3)-(4)**

"CAFA contains several exceptions to its grant of removal jurisdiction." *Singh v. Am. Honda Finance Corp.*, --- F.3d ---, 2019 WL 2293436, at * 8 (9th Cir. 2019). Plaintiff contends that, even if the Court has jurisdiction under CAFA, either of two such exceptions—the local controversy and/or home state controversy exception—applies. Importantly, Plaintiff carries the burden of proof to show that either exception applies "because 'CAFA should be read with a strong preference that interstate class actions should be heard in a federal court properly removed by any defendant.'" *Id.* (quoting *Bridewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 928 (9th Cir. 2015); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007) (holding party moving to remand bears burden to establish applicability of exceptions under § 1332(d)(4)(A) and (B)).

The home state exception provides that a "district court shall decline to exercise jurisdiction over a class in which two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." *Id.* (quoting § 1332(d)(4)(B) (internal quotation marks omitted)). Similarly, the local controversy exception requires Plaintiff to show that "greater than two-thirds of the proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed," among other requirements. § 1332(d)(4)(A)(i)(I). Although Plaintiff bears the burden to show that either exception applies, she offers no evidence of where the class members are domiciled. Rather, Plaintiff relies only on "Defendant's admission [in its opposition brief] that the class members in this case consist of 'primarily California citizens.'" [Doc. 11 at p. 10.] That so-called

---

amount of damages in subsequent proceedings and at trial. This is so because they are not stipulating to damages suffered, but only estimating the damages that are in controversy.").

11

"admission," however, is not enough, and Plaintiff fails to carry her burden.

In *Mondragon v. Capital One Auto Finance*, 736 F.3d 880 (9th Cir. 2013), the Ninth Circuit examined whether a plaintiff seeking remand based on the "local controversy exception" of CAFA met his evidentiary burden to prove the exception applied. *Id.* at 883. There, the putative class consisted of consumers who had purchased and registered cars in California. The plaintiff argued that the class definition necessarily supported the inference that the exception applied because presumably, most consumers who purchase and register cars in California are California citizens. Although agreeing with that premise, the court reasoned it was also likely that some of the class members were not California citizens. *Id.* at 884. As examples, the court explained that presumably "some automobiles were purchased and registered in California by members of the military, by out-of-state students, [or] by owners of second homes." *Id.* Finally, the court noted that there was "simply no evidence in the record to support a finding that the group of citizens outnumbers the group of non-citizens by more than two to one." *Id.*

Despite acknowledging that its "holding m[ight] result in some degree of inefficiency by requiring evidentiary proof of propositions that appear likely on their face," the *Mondragon* court "conclude[d] that there must ordinarily be facts in evidence to support a finding that two-thirds of putative class members are local state citizens." *Id.* at 882. The court continued, "A pure inference regarding the citizenship of prospective class members may be sufficient if the class is defined as limited to citizens of the state in question, but otherwise such a finding should not be based on guesswork." *Id.*

Here, Plaintiff asks this Court to make a jurisdictional finding of fact based on the unsupported assumption that more than two-thirds of the putative class members, including the 636 putative class members who separated from their employment with Defendant, are California citizens. First, Plaintiff's class definition is not "limited to citizens of the state in question," which would arguably permit such an inference. *See id.* Second, as in *Mondragon*, it is just as likely that many of the putative class member employees—

although employed at one time by Defendant in California—are no longer California citizens. For example, people move into and out of the State of California every day, particularly after separating from their employment. Without any evidence in the record supporting Plaintiff's assertion, Plaintiff does not carry her burden to show the greater than two-thirds requirement for either exception. A finding to the contrary would be based on "guesswork," even if that guesswork might be "sensible." *Id.* at 884. Plaintiff's motion to remand is **DENIED**.

## II. CONCLUSION

For the previous reasons, Plaintiff's motion to remand is **DENIED**.

**IT IS SO ORDERED.**

DATED: July __, 2019

Hon. Roger T. Benitez
United States District Court Judge